**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SUMMIT GOLF BRANDS, INC. and B. DRADDY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DAIRY BOY, LLC and PAIGE PAUL, an Individual,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF FOR VIOLATIONS OF 15 USC §§ 1114, 1116, AND 1125(a) AND RELATED CLAIMS**<br><br>Complaint Filed: October 20, 2026 |

## COMPLAINT

Plaintiffs Summit Golf Brands, Inc. ("Summit Golf") and B. Draddy, LLC ("B. Draddy") (collectively, "Plaintiffs") hereby allege as follows:

## INTRODUCTION

1. This action for an injunction, damages, and other appropriate relief is brought against Defendant Dairy Boy, LLC ("Dairy Boy") and Paige E. Paul (née Lorenze) ("Paul" and collectively with Dairy Boy, "Defendants") for trademark infringement, false designation of origin, and unfair business practices in violation of the Lanham Act, 15 U.S.C. §§ 1114(1), 1116(d), and 1125(a)(1); Connecticut Unfair Trade Practices Act, Gen. Stat. §§ 42-110b(a), 42-110g; Conn. Gen. Stat. § 35-11i(a)–(b); and common law, arising from Defendants' use of an identical designation for use on competitive and directly related clothing that is likely to cause confusion with Plaintiffs' marks.

## PARTIES

### Plaintiffs

2. Plaintiff Summit Golf is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 437 Fifth Avenue, 9th Floor, New York, New York 10016.

3. Plaintiff B. Draddy is a subsidiary of Summit Golf and is a limited liability company with its principal place of business in New York, New York.

**Defendants**

4. Defendant Dairy Boy is a limited liability corporation organized under the laws of the State of Connecticut, with its principal place of business located at 113 Post Road East, Westport, Connecticut 06880.

5. Defendant Paige Paul is the founder and owner of Dairy Boy, and a citizen of the State of Connecticut.

## JURISDICTION AND VENUE

6. This is an action for trademark infringement and unfair competition under federal, state, and common law.

7. This Court has original subject-matter jurisdiction over the claims for trademark infringement and federal unfair competition pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. §§ 1116, 1117, 1121(a) and 1125, as these claims arise under the laws of the United States. This Court has supplemental jurisdiction over the claims that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8. This Court has personal jurisdiction over Dairy Boy because Dairy Boy is a limited liability company organized and existing under the laws of the State of Connecticut, with its principal place of business at 113 Post Road East, Westport, Connecticut 06880, and conducts substantial business in this District, including selling casualwear and sportswear.

9. This Court has personal jurisdiction over Paul because she is an individual domiciled in the State of Connecticut.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to the claims occurred in this judicial district.

# FACTUAL BACKGROUND

**Plaintiffs' Intellectual Property**

11. B. Draddy launched in 2013 as part of the Summit Golf Brands clothing portfolio. B. Draddy markets its apparel to consumers attracted to a lifestyle of sporting leisure, classic American styling, and premium casual dress. B. Draddy presents its merchandise as versatile clothing for the course, clubhouse, and everyday life, all with a flair of "aristocratic bohemian" style.[1]

12. B. Draddy identifies its apparel with a particular interlaced "B" and "D" design. The design functions as a compact visual identifier that B. Draddy can display on its garments with or without placing its full name beside it.

13. Summit Golf owns incontestable U.S. Trademark Registration No. 4,988,408 for the stylized BD mark associated with the B. Draddy brand, shown below in Figure 1, which was filed on November 6, 2015, claiming use at least as early as June 30, 2013. This registration, along with Plaintiffs' common-law rights in the stylized BD mark, are referred to as the "BD Mark."



**Figure 1**

14. Summit Golf's federal trademark registrations for the stylized BD Mark confers constructive nationwide priority and rights in that mark as of its registration date and constitutes prima facie evidence of Summit Golf's ownership of the mark, the validity of the registration, and Plaintiffs' exclusive right to use the marks in commerce in connection with the registered goods

[1] Our Story, B. Draddy, https://bdraddy.com/pages/about-us (last visited Oct. 19, 2026); History, Summit Golf Brands, https://www.summitgolfbrands.com/pages/history (last visited Oct. 19, 2026). Plaintiffs respectfully request that the Court take judicial notice of the existence and publicly available contents of the websites cited herein, including to establish that statements were publicly made. *See Perez v. Ahlstrom Corp.*, No. 10-cv-1299 (VLB), 2011 WL 2533801, at *2 (D. Conn. June 27, 2011) (recognizing "[i]t is generally proper to take judicial notice of articles and Web sites published on the Internet" where the- website's authenticity is not disputed) (internal citations omitted).

and services.

15. Copies of the US registration and renewal certificates for the stylized BD mark are attached as **Exhibit A**.

16. B. Draddy is well known for its stylized BD Mark. The B. Draddy Mark has been presented to consumers for years as a source identifier on luxury lifestyle apparel; a February 2017 product review expressly identified the BD Mark on a polo shirt's exterior pocket, and B. Draddy now offers a dedicated "BD Icon" collection featuring polos, sweaters, and other merchandise bearing the BD Mark.[2] In a September 2026 interview, *Summit* reported that its B. Draddy Sport for Women collection had expanded to more than 500 retail locations within just eight months of its launch, with consumer demand so strong that the company struggled to maintain sufficient inventory.[3] Most recently, B. Draddy was honored to be named the Official Uniform Provider of the 2026 Solheim Cup U.S. Team and the 2026 Presidents Cup U.S. Team.[4]

**<u>Defendants' Unauthorized Use of the BD Mark</u>**

17. Dairy Boy similarly presents its products as expressions of Paul's New England lifestyle and reinforces that association through branded experiences, including its Polo Classic at Greenwich Polo Club.[5] These branding similarities extend to the merchandise itself: B. Draddy offers its logo-bearing Liam Cotton Polo at a listed price of $120, while Dairy Boy offers its cotton American Rugby at $95, describing that garment as a men's-inspired polo with collegiate styling and interlock embroidery at the left chest.

18. For example, Figures 2(a) and 2(b) are screen captures comparing Plaintiffs' Liam Cotton Polo from the BD Icon collection bearing the BD Mark, with a Dairy Boy's polo, carrying a strikingly similar mark.

---

[2] Adam Staelin, *B. Draddy Apparel*, Three Guys Golf (Feb. 23, 2017), https://www.threeguysgolfblog.com/b-draddy-apparel/; B. Draddy Icon Collection, B. Draddy, https://bdraddy.com/collections/bdraddy-icon (last visited Oct. 17, 2026).

[3] Neil Hay & Tom Miranda, *GBR Tuesday* | *Women's Golf Moves the Retail Needle*, Golf Bus. Rev. (Sep. 8, 2026), https://www.golfbusinessreview.com/p/gbr-tuesday-womens-golf-moves-the.

[4] B. Draddy, See https://bdraddy.com/pages/presidents-cup-2026?zCountry=US and Solheim Cup 2026 – B.Draddy.

[5] Paige Lorenze and Her Brand, *Dairy Boy—A Story of Nostalgia and Self*, Dairy Boy, https://dairyboy.com/pages/about-the-brand (last visited Oct. 17, 2026).




Figure 2(a)




Figure 2(b)

19. Defendants market and sell competing casualwear and sportswear, including polos, socks and sweaters, through Dairy Boy's commercial website, Dairyboy.com, and several social media websites owned both by Paul and Dairy Boy.

20. On information and belief, Defendants also sell the competing casualwear and sportswear in a brick-and-mortar boutique in Nantucket, Massachusetts.

21. Dairy Boy has experienced commercial growth by targeting aspirational luxury branding. According to third-party market estimates, Dairy Boy generates approximately $43,600 in daily revenue, with estimated monthly revenues reaching as much as $1.7 million.[6]

22. Paul is the creator and founder of Dairy Boy, a brand whose commercial identity is built around her personal image and lifestyle. The Dairy Boy website describes Dairy Boy's merchandise as "shoppable, tangible pieces" reflecting Paul's life, linking its products to her outdoor activities and New England country living.[7] Dairy Boy thus expressly presents its merchandise as a means for consumers to purchase a connection to the lifestyle Paul promotes.[8]

23. Paul has publicly identified herself as Dairy Boy's founder and creative director and acknowledged her direct involvement in the company's management, operations, and creative direction. In a 2025 interview, Paul stated that she was "running the business and the creative side"

[6] *Dairy Boy*, Brandsearch, https://brandsearch.co/brands/dairyboy.com (last visited Oct. 17, 2026).
[7] *See Paige Lorenze and Her Brand*, supra note 3.
[8] *See id.*

of Dairy Boy, emphasizing that she remained "heavily involved" in the brand's development and exercised substantial control over its direction.[9]

24. Defendants market the Dairy Boy apparel and accessories through a limited-inventory, "drop-based" sales model, in which merchandise is released in limited quantities rather than offered continuously throughout the year.[10] Dairy Boy's drop-based sales model relies on advanced promotion of limited merchandise releases, and Paul personally uses her social media accounts to advertise and promote products bearing the infringing BD Mark, thereby exposing her substantial audience to the infringing mark and facilitating the commercial promotion and sale of the accused merchandise.[11]

25. For example, Figure 3(a) is a screen capture of an Instagram post from the "Dairy Boy Polo Classic," an "immersive" promotional event that hosted over 200 celebrities and guests.[12] The image features Paul standing in front of a car that prominently features Plaintiffs' BD Mark. The post received 3,410 likes.




**Figure 3**

---

[9] *See* Erin Fitzpatrick, *Paige Lorenze Told Us All About Her Custom Wimbledon Dress, Who What Wear* (July 2025), https://www.whowhatwear.com/fashion/celebrity-style/paige-lorenze-wimbledon-interview.

[10] Annabel Burba, *How This Influencer Turned Viral Merch into a Fast-Growing Business, Inc.* (Sep. 22, 2025), https://www.inc.com/annabel-burba/how-this-influencer-turned-viral-merch-into-a-fast-growing-business/91241699.

[11] Hannah Oh, *Exclusive: When It Comes to Dairy Boy, Paige Lorenze Is Playing the Long Game*, Cosmopolitan (Aug. 12, 2025), https://www.cosmopolitan.com/style-beauty/fashion/a65653782/paige-lorenze-dairy-boy/.

[12] *See* Michelle Lee, *Inside Paige Lorenze's Kick-off to Dairy Boy Summer at Her Lifestyle Brand's First Polo Classic Event (Exclusive)*, People (June 9, 2025), https://people.com/paige-lorenze-dairy-boy-polo-classic-event-exclusive-photos-11750755.

26. Figure 4 is a screen capture from marketing materials on the Dairy Boy Instagram stories feed, featuring the same car and use of the BD Mark in connection with the promotion of Dairy Boy clothing.




**Figure 4**

27. Figure 5 is another screen capture from the Dairy Boy Instagram page displaying the BD Mark in connection with advertising. The comment from username grace_dewald tags B. Draddy and states, "@bdraddy looks a lot like your logo."




**Figure 5**

28. Defendants simply stole Plaintiffs' trademarked logo and brand recognition and reaped the benefits of its use. Defendants have achieved financial success through blatant, willful, and repeated trademark infringement of the BD Mark.

29. On January 6, 2026, Plaintiffs sent Dairy Boy a cease-and-desist letter concerning their use of the BD Mark on scarves and polo-inspired shirts, as well as in the Instagram advertisements above, depicting the BD Mark on a car door and alongside a polo horse.

30. Dairy Boy represented that these uses were isolated, one-time occurrences, and that the infringing materials had been removed. Dairy Boy also represented that it only had a limited inventory of infringing scarves and shirts that would be sold out over a six- to nine-month period.

31. Plaintiffs generously agreed to the requested delay as limited accommodation, based on their good-faith belief that Dairy Boy would deplete its existing inventory and cease its infringing activity. The accommodation was not intended to authorize use beyond the agreed terms or relinquish Plaintiffs' right to seek preliminary injunctive relief. Defendants' ongoing infringement described below nevertheless poses an imminent threat of consumer confusion and irreparable injury to Plaintiffs' goodwill and control over the BD Mark.

32. Defendants temporarily pulled the infringing scarves from their website and promised to sell down the remaining shirts.

33. However, Defendants entered into this agreement in bad faith. Rather than cease all use by September as agreed, they increased use of the BD Mark and leveraged Plaintiffs' goodwill to implement their "drop-based model"—pulling the scarves and polo-inspired marketing campaign ***temporarily*** to create even greater demand for the unauthorized products in the fall season. In mid-September 2026, after the sell-down period, Defendants continued selling the infringing shirts, marketed the rugby shirts using the BD Mark, and reintroduced the infringing scarves.

34. For example, Figure 2(b) above shows the continued sale of the collared shirt. Figures 4 and 5 above show that the polo-inspired advertising campaign had also been reposted to the Dairy Boy Instagram marketing campaign. Figure 6 below is a screen capture from the Dairy

Boy website showing the reposted sale of the infringing scarves.




**Figure 6**

35. Dairy Boy asked Plaintiffs for an extended grace period to sell down through Black Friday, and Plaintiffs reluctantly agreed based on assurances that this was the absolute last of the clothing and marketing using the infringing BD Mark.

36. But, just a mere two weeks after assurances of termination of the infringing use, Defendants blatantly and knowingly expanded its use of the BD Mark to include several new products. For example, Figure 7 is a screen capture from Dairy Boy's Instagram account, showcasing a Dairy Boy sweater emblazoned with the BD Mark, which received 5,289 likes.



**Figure 7**

37. Likewise, Figure 8 is a screen capture from Dairy Boy's Instagram account, showcasing Dairy Boy socks bearing the BD Mark, which received 5,138 likes.




**Figure 8**

38. On information and belief, Defendants are using the trademark, derivative, and/or colorable imitation of the BD Mark in a manner that is likely to cause confusion or mistake or to deceive consumers, and Defendants intend to profit and be unjustly enriched by such use of the BD Mark.

39. Defendants' adoption and continued use of the BD Mark after Summit Golf's federal registration and priority date, and in direct competition with Plaintiffs' nationwide clothing, demonstrate willful intent to capitalize on the reputation and recognition of the BD Mark.

40. On information and belief, both consumers of casualwear and sportswear, and members of the general public, are likely to be confused by the use of the BD Mark in connection with Defendants' goods.

41. On information and belief, Defendants' use of the BD Mark constitutes a misrepresentation of origin and an unfair tactic by Defendants to confuse members of the public into believing that Defendants are associated with B. Draddy.

**FIRST CAUSE OF ACTION BROUGHT BY SUMMIT GOLF**

**Trademark Infringement, 15 U.S.C. § 1114(1)**

42. Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

43. Defendants are not authorized to use the BD Mark, or any mark confusingly similar to or that in any way represents or implies that Defendants' services are in any way associated with Plaintiffs.

44. The above acts of Defendants constitute trademark infringement of Plaintiffs' BD Mark, including, but not limited to, the federally registered marks owned by Summit Golf above, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

45. Defendants have used and continue to use a reproduction, counterfeit, copy, or colorable imitation of the mark for competitive casualwear and sportswear clothing.

46. Defendants' use of the confusingly similar DB symbol for its competitive casualwear and sportswear clothing is likely to cause confusion among the general consuming public and trade as to the identity and origin of Defendants' casualwear and sportswear clothing.

47. On information and belief, Defendants' conduct has been knowing, deliberate and willful.

48. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have been, and will continue to be, irreparably harmed, injured and/or damaged by Defendants' wrongful acts, and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

**SECOND CAUSE OF ACTION BROUGHT BY ALL PLAINTIFFS**

**Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125(a)(1)**

49. Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

50. Defendants' use of the confusingly similar DB symbol for Dairy Boy's competitive casualwear and sportswear clothing constitutes false designation of origin in violation of

Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

51. Defendants' use of a confusingly similar DB symbol for Dairy Boy's casualwear and sportswear clothing is likely to cause confusion, cause the mistaken identity of, or deceive as to the affiliation, connection, or association of Defendants or Defendants' goods with Plaintiffs or Plaintiffs' casualwear and sportswear clothing, or as to the origin, sponsorship, or approval of Defendants' goods.

52. Defendants have competed unfairly and continue to compete unfairly with Plaintiffs.

53. On information and belief, Defendants' unlawful conduct has been knowing, deliberate and willful.

54. Defendants have been and are likely to continue to be unjustly enriched by their unlawful conduct.

55. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have been, and will continue to be, harmed, injured and/or damaged by Defendants' wrongful acts, and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

## THIRD CAUSE OF ACTION BROUGHT BY ALL PLAINTIFFS

### Connecticut Unfair Trade Practices Act, Gen. Stat. §§ 42-110b(a), 42-110g

56. Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

57. Summit Golf is the owner of the BD Mark and has rights under the BD Mark through extensive use over many years.

58. B. Draddy is Summit's authorized operating subsidiary and uses the BD Mark in marketing, distributing, and selling B. Draddy apparel.

59. Defendants willfully and knowingly used, and continue to use, the BD Mark in interstate commerce for purposes of advertising and promoting their business without the consent of Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1)(b).

60. Defendants' advertisements and promotions of their business unlawfully using the BD Mark have been disseminated to the relevant consumer population.

61. Defendants' use of the BD Mark in connection with the unauthorized advertising and promotion of their consumer goods misrepresents the nature, characteristics, qualities, and origin of those goods.

62. Defendants' use of the BD Mark in connection with their business is likely to cause confusion, cause mistake, or deceive because it suggests that the goods provided by Defendants are the same as the goods legitimately bearing Plaintiffs' BD Mark. Defendants' use is likely to cause confusion because it also suggests that their business, or the goods provided by their business, originate from, or are sponsored, authorized, or otherwise connected with, Plaintiffs.

63. Defendants' unauthorized use of the BD Mark, in advertising and otherwise, infringes on Summit Golf's BD Mark.

64. As a proximate result of Defendants' actions, Summit Golf has suffered, and will continue to suffer, great damage, including to its business, goodwill, reputation, and profits, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION BROUGHT BY SUMMIT GOLF

### Trademark Infringement, Conn. Gen. Stat. § 35-11i(a)–(b)

65. Summit Golf re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66. Summit Golf is informed and believes, and, on that basis, alleges, that Defendants have used, and continue to use, the confusingly similar DB symbol and designation for Defendants' casualwear and sportswear goods for the purpose of enhancing the commercial value of, or selling or soliciting purchases of, Defendants' goods.

67. As a direct and proximate result of Defendants' unlawful conduct, Summit Golf has been, and will continue to be, harmed, injured and/or damaged by Defendants' wrongful acts, and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

## SIXTH CAUSE OF ACTION BROUGHT BY ALL PLAINTIFFS

### Common Law Unfair Competition

68. Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

69. In addition to its rights under the Lanham Act and state statutory law, Plaintiffs also have valid and existing common law rights with respect to their mark.

70. The above acts of Defendants constitute unfair competition under common law.

71. Plaintiffs are informed and believe, and, on that basis, allege, that the above acts of Defendants were, and continue to be, willful and malicious, and undertaken with the deliberate intent to injure the business of Plaintiffs and to improve Defendants' business. Plaintiffs, therefore, are entitled to exemplary damages based on common law unfair competition principles.

72. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have been, and will continue to be, harmed, injured and/or damaged by Defendants' wrongful acts, and such harm, injury and/or damage will continue unless Defendants' conduct is enjoined by the Court.

73. Plaintiffs are entitled to relief against Defendants, including full restitution and/or disgorgement of all profits and benefits that may have been obtained by Defendants as a result of such unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. That the Court order that Defendants' conduct, as alleged in this Complaint, constitutes trademark infringement, false designation of origin, unfair competition, and unfair or deceptive trade practices in violation of the applicable provisions of the Lanham Act, Connecticut statutory law, and Connecticut common law;

2. That the Court order that Defendants' infringement of the BD Mark and false advertising is and has been willful and committed with reckless disregard for Plaintiffs' rights;

3. That the Court enjoin Defendants and each of its affiliates, officers, partners,

associates, agents, servants, and employees, and all others acting for, with, by, through, under, or in concert with Defendants from:

(a) using the BD Mark or any reproductions, or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product or service that is not a genuine B. Draddy product or service;

(b) representing or implying that Dairy Boy's apparel is manufactured by, affiliated with, sponsored by, approved by, or authorized by Plaintiffs;

(c) committing any acts calculated to cause consumers to believe that Defendants' infringing products are or were sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

(d) further infringing the BD Mark and damaging Plaintiffs' goodwill or otherwise engaging in unfair competition;

(e) marketing or offering for sale or distribution any product or service bearing the BD Mark, or any reproductions, copies, or colorable imitations thereof, or otherwise engaging in any of the above activities in subparagraphs (a)–(d), including in connection with any licensure or registration with any government or third-party agency, or any other online location; and

(f) assisting or authorizing any third party to engage in any of the actions prohibited by subparagraphs (a)–(e) above, inclusive.

4. Order Defendants, at their own expense, to remove or disable all product listings, advertisements, social media posts, and other promotional materials within their possession or control that display the BD Mark or a confusingly similar reproduction, copy, or colorable imitation thereof in connection with the infringing products, and to take reasonable steps to secure the removal of such materials from accounts and platforms under Defendants' control.

5. Direct that Defendants, pursuant to 15 U.S.C. § 1116(a), file with the Court and serve upon Plaintiffs, within thirty days of the entry of the injunctions requested herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which it has complied with the injunctions;

6. Order that Defendants pay to Plaintiffs such damages as Plaintiffs have sustained by reason of Defendants' acts complained of herein;

7. Order that Defendants account to and pay Plaintiffs for all profits derived by Defendants by reason of the acts complained of herein;

8. Award Plaintiffs enhanced actual damages, up to three times the amount assessed, and such adjustment of Defendants' profits as the Court finds just under the circumstances, pursuant to 15 U.S.C. § 1117(a) and Conn. Gen. Stat. § 35-11i(a)–(b), with such enhancement or adjustment constituting compensation and not a penalty;

9. Order Defendants to pay Plaintiffs their reasonable attorneys' fees and costs;

10. Enter an order placing reasonable but effective restrictions on Defendants' future transactions and activities to prevent fraud on the Court and ensure Defendants' capacity to pay, and the prompt payment of, any judgment entered against Defendants in this action;

11. Award Plaintiffs pre-judgment and post-judgment interest on each monetary award; and

12. Award Plaintiffs such other and further relief as this Court may deem proper.

Dated: October 20, 2026

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Christopher M. Wasil*

Christopher M. Wasil (ct28579)
One State St.
Hartford, CT 06103-3178
Telephone: +1.860.240.2719
Facsimile: +1.860.240.2800
email: christopher.wasil@morganlewis.com

Brent A. Hawkins (*Pro Hac Vice Forthcoming*)
600 Montgonery St., Suite 2300
San Francisco, CA 94111-2725
Telephone: +1.415.442.1000
Facsimile: +1.415.442.1001
email: brent.hawkins@morganlewis.com

Rebecca E. McDougall (*Pro Hac Vice Forthcoming)*
Amber Grant (*Pro Hac Vice Forthcoming*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: +1.202.739.3000
Facsimile: +1.202.739.3001
email: rebecca.mcdougall@morganlewis.com

Kristina Martinez (*Pro Hac Vice Forthcoming*)
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626-7653
Telephone: +1.714.830.0600
Facsimile: +1.714.830.0700
email: kristina.martinez@morganlewis.com

*Attorneys for Plaintiffs*
SUMMIT GOLF BRANDS, INC. and B. DRADDY, LLC.

# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

**Reg. No. 4,988,408**

**Registered June 28, 2016**

**Int. Cl.: 25**

**TRADEMARK**

**PRINCIPAL REGISTER**

SUMMIT GOLF BRANDS, INC. (DELAWARE CORPORATION)
SUITE 388
4 CORPORATE DRIVE
SHELTON, CT 06484

FOR: CLOTHING, NAMELY, SHIRTS AND SHORTS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 6-30-2013; IN COMMERCE 6-30-2013.

THE MARK CONSISTS OF INTERTWINED STYLIZED LETTERS "B" AND "D".

SER. NO. 86-811,735, FILED 11-6-2015.

CHERYL CLAYTON, EXAMINING ATTORNEY

UNITED STATES PATENT AND TRADEMARK OFFICE · DEPARTMENT OF COMMERCE

Michelle K. Lee

Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

**From:** TMOfficialNotices@USPTO.GOV
**Sent:** Wednesday, August 05, 2026 18:01:07 EDT
**To:** XXXX
**Subject:** Official USPTO Notification: U.S. Trademark Registration No. 4988408 -- Docket/Reference No. 123942-0011

---

**U.S. Serial Number:** 86811735
**U.S. Registration Number:** 4988408
**U.S. Registration Date:** June 28, 2016
**Mark:** BD
**Owner:** Summit Golf Brands, Inc.

August 05, 2026

## NOTICE OF ACCEPTANCE UNDER SECTION 8

The declaration of use or excusable nonuse filed for the above-identified registration meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. §1058. **The Section 8 declaration is accepted.**

## NOTICE OF REGISTRATION RENEWAL UNDER SECTION 9

The renewal application filed for the above-identified registration meets the requirements of Section 9 of the Trademark Act, 15 U.S.C. §1059. **The registration is renewed.**

**The registration will remain in force for the class(es) listed below, unless canceled by an order of the Commissioner for Trademarks or a Federal Court, as long as the requirements for maintaining the registration are fulfilled as they become due.**

**Class(es):**
025

TRADEMARK SPECIALIST
POST-REGISTRATION DIVISION
571-272-9500

---

### REQUIREMENTS FOR MAINTAINING REGISTRATION IN SUCCESSIVE TEN-YEAR PERIODS

**WARNING: Your registration will be canceled if you do not file the documents below during the specified statutory time periods.**

**What and When to File:** You must file a declaration of use (or excusable nonuse) **and** an application for renewal between every 9th and 10th-year period, calculated from the registration date. See 15 U.S.C. §§1058, 1059.

**Grace Period Filings**

The above documents will be considered as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

*****THE USPTO IS NOT REQUIRED TO SEND ANY FURTHER NOTICE OR REMINDER OF THESE REQUIREMENTS. THE OWNER SHOULD CONTACT THE USPTO ONE YEAR BEFORE THE EXPIRATION OF THE TIME PERIODS SHOWN ABOVE TO DETERMINE APPROPRIATE REQUIREMENTS AND FEES.*****

To check the status of this registration, go to https://tsdr.uspto.gov/#caseNumber=86811735&caseSearchType=US_APPLICATION&caseType=SERIAL_NO&searchType=statusSearch or contact the Trademark Assistance Center at 1-800-786-9199.

To view this notice and other documents for this registration on-line, go to https://tsdr.uspto.gov/#caseNumber=86811735&caseSearchType=US_APPLICATION&caseType=SERIAL_NO&searchType=documentSearch NOTE: This notice will only be available on-line the next business day after receipt of this e-mail.

* **For further information, including information on filing and maintenance requirements for U.S. trademark applications and registrations and required fees, please consult the USPTO website at https://www.uspto.gov/trademark/ or contact the Trademark Assistance Center at 1-800-786-9199.**